IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division



FILED

JUN 1 3 2019

CLERK, U.S. DISTRICT COURT
RICHMOND, VA

**STERLING NORRIS PITTMAN,**

Petitioner,

v.                                                                                           Civil Action No. **3:18CV554**

**HAROLD W. CLARKE,**

Respondent.

## MEMORANDUM OPINION

Sterling Norris Pittman, a Virginia state prisoner proceeding *pro se*, brings this petition

pursuant to 28 U.S.C. § 2254 ("§ 2254 Petition," ECF No. 5) challenging his 2014 convictions in

the Circuit Court of the County of Henrico, Virginia ("Circuit Court"). Pittman argues that he is

entitled to relief on the following grounds:[1]

> Claim One:   (a) "The trial court erred for not instructing [the] jury on the elements of
> first-degree murder." (§ 2254 Pet. 5.)
> (b) "[The] evidence presented at trial was insufficient to establish
> first-degree [murder]." (*Id.*)
>
> Claim Two:   "The trial court erred by not disregarding the testimony of Shamika Gee,
> [the] Commonwealth's key witness, who has admitted under oath that she
> ha[s] lied." (*Id.* at 7.)
>
> Claim Three:   "[Pittman's] Fifth and Fourteenth Amendment rights were violated because
> the Commonwealth knowingly used perjured testimony by Shamika Gee."
> (*Id.* at 8.)

Respondent moves to dismiss on the grounds that Pittman's claims are procedurally

defaulted and barred from review here and, in the alternative, that they lack merit. Pittman filed

an "Affidavit," responding to Respondent's Motion to Dismiss ("Response," ECF No. 15). For

---

[1] The Court employs the pagination assigned by the CM/ECF docketing system for citations to the
parties' submissions. The Court corrects the spelling, punctuation, and capitalization in the
quotations from Pittman's submissions.

the reasons set forth below, the Motion to Dismiss (ECF No. 11) will be GRANTED. Claims One (a) and Three will be DISMISSED as procedurally defaulted, and the remaining claims will be DISMISSED for lack of merit.

## I. PROCEDURAL HISTORY

On June 4, 2014, a jury convicted Pittman of one count of first-degree murder and one count of use of a firearm in the commission of a felony.[2] *See Commonwealth v. Pittman*, Nos. CR13–3402, CR13–3403, at 1–2 (Va. Cir. Ct. June 12, 2014). The Circuit Court sentenced Pittman to life in prison for the first-degree murder conviction plus three years in prison for the use of a firearm in the commission of a felony conviction. *Commonwealth v. Pittman*, Nos. CR13–3402, CR13–3403, at 1 (Va. Cir. Ct. Sept. 16, 2014).

Pittman, proceeding with counsel, appealed, raising the following assignment of error: "The court erred in finding the evidence sufficient to prove that the defendant committed murder in the first degree or any degree of homicide due to the lack of proof of premeditation, the circumstantial nature of the evidence, and the questionable credibility of the witnesses." Petition for Appeal 2, *Commonwealth v. Pittman*, No. 1761–14–2 (Va. Ct. App. filed Jan. 21, 2015) (emphasis omitted). On May 20, 2015, the Court of Appeals of Virginia denied the petition for

---

[2] In addition to being convicted of one count of first-degree murder and one count of use of a firearm in the commission of a felony, Pittman was also charged with possession of a firearm after having been previously convicted of a violent felony. *Commonwealth v. Pittman*, Nos. CR13–3402, CR13–3403, CR13–3404, at 1 (Va. Cir. Ct. June 12, 2014). On the first day of Pittman's trial, prior to his arraignment, the attorney for the Commonwealth requested that the Clerk "arraign him on everything except the firearm felony charge." (June 3, 2014 Tr. 7.) Pittman was then arraigned on the first-degree murder charge and the use of a firearm in the commission of a felony charge, and his trial proceeded on those two charges. (June 3, 2014 Tr. 7–8.) The violent felon in possession of a firearm charge was *nolle prossed*. *See* http://www.courts.state.va.us/main.htm (select "Case Status and Information;" select "Circuit Court" from drop-down menu; select hyperlink for "Case Information;" select "Henrico Circuit Court" from drop-down menu and select "Begin" button; select "Criminal" division; type "Pittman, Sterling," and select "Search by Name" button; select hyperlink for "CR13003404–00" under "Case Number" heading).

2

appeal. *Pittman v. Commonwealth*, No. 1761-14-2, at 1 (Va. Ct. App. May 20, 2015). A three-judge panel also denied the petition for appeal. *Pittman v. Commonwealth*, No. 1761-14-2 (Va. Ct. App. Sept. 22, 2015).

On May 6, 2016, the Supreme Court of Virginia refused the petition for appeal, but remanded the case to the Circuit Court to address "a discrepancy" regarding whether Pittman was convicted and sentenced for use of a firearm in the commission of a felony, first offense, or for use of a firearm in the commission of a felony, second or subsequent offense. *Pittman v. Commonwealth*, No. 151595, at 1 (Va. May 6, 2016). The Supreme Court of Virginia described the discrepancy as follows: "The sentencing order recited that appellant was found guilty of 'use of a firearm in the commission of a felony, second or subsequent offense;'" however, "[a]ppellant was not arraigned on a second or subsequent offense for the firearm charge; nor was the jury instructed on a second or subsequent offense." *Id.* On June 2, 2016, the Circuit Court entered a Corrected Sentencing Order, clarifying that Pittman was convicted and sentenced to three years of incarceration for one count of use of a firearm in the commission of a felony, first offense, and to life in prison for one count of first-degree murder. *Commonwealth v. Pittman*, Nos. CR13-3402, CR13-3403, at 1 (Va. Cir. Ct. June 2, 2016).

On May 18, 2017, Pittman filed a petition for a writ of habeas corpus in the Circuit Court, raising the same claims that he raises in his instant § 2254 Petition. *See* Petition for Writ of Habeas Corpus 1, *Pittman v. Commonwealth*, No. CL17-1474 (Va. Cir. Ct. filed May 18, 2017); Memorandum of Law in Support of Petition for Writ of Habeas Corpus 6, *Pittman*, No. CL17-1474. On July 31, 2017, the Circuit Court dismissed Pittman's petition, finding that he defaulted his claims under *Slayton v. Parrigan*, 205 S.E.2d 680, 682 (Va. 1974), and *Henry v. Warden*, 576 S.E.2d 495, 496 (2003), and that his challenge to the sufficiency of the evidence was not a ground for state habeas relief. *Pittman v. Commonwealth*, No. CL17-1474, at 1-2 (Va. Cir. Ct. July 31,

2017). Pittman appealed to the Supreme Court of Virginia. Petition for Appeal, *Pittman v. Commonwealth*, No. 171429 (Va. filed Oct. 30, 2017). On June 29, 2018, the Supreme Court of Virginia refused the petition for appeal. *Pittman v. Commonwealth*, No. 171429 (Va. June 29, 2018). Thereafter, Pittman filed the instant § 2254 Petition in this Court. (§ 2254 Pet. 1.)

## II. EXHAUSTION AND PROCEDURAL DEFAULT

Before a state prisoner can bring a § 2254 petition in federal district court, the prisoner must first have "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). State exhaustion "is rooted in considerations of federal-state comity," and in Congressional determination via federal habeas laws "that exhaustion of adequate state remedies will 'best serve the policies of federalism.'" *Slavek v. Hinkle*, 359 F. Supp. 2d 473, 479 (E.D. Va. 2005) (some internal quotation marks omitted) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 491–92 & n.10 (1973)). The purpose of exhaustion is "to give the State an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Picard v. Connor*, 404 U.S. 270, 275 (1971) (internal quotation marks omitted). Exhaustion has two aspects. First, a petitioner must utilize all available state remedies before the petitioner can apply for federal habeas relief. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 844–48 (1999). As to whether a petitioner has used all available state remedies, the statute notes that a habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c).

The second aspect of exhaustion requires a petitioner to have offered the state courts an adequate "opportunity" to address the constitutional claims advanced on federal habeas. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (internal quotation marks omitted) (quoting *Duncan v. Henry*, 513 U.S. 364, 365–66 (1995)). "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with

4

powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Id.*

Fair presentation demands that a petitioner present "both the operative facts and the controlling

legal principles" to the state court. *Longworth v. Ozmint*, 377 F.3d 437, 448 (4th Cir. 2004)

(internal quotation marks omitted) (quoting *Baker v. Corcoran*, 220 F.3d 276, 289 (4th Cir. 2000)).

The burden of proving that a claim has been exhausted in accordance with a "state's chosen

procedural scheme" lies with the petitioner. *Mallory v. Smith*, 27 F.3d 991, 994–95 (4th Cir. 1994).

"A distinct but related limit on the scope of federal habeas review is the doctrine of

procedural default." *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998). This doctrine provides

that "[i]f a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a

state procedural rule, and that procedural rule provides an independent and adequate ground for

the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." *Id.* (citing

*Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991)). A federal habeas petitioner also

procedurally defaults claims when he or she "fails to exhaust available state remedies and 'the

court to which the petitioner would be required to present his claims in order to meet the exhaustion

requirement would now find the claims procedurally barred.'" *Id.* (quoting *Coleman*, 501 U.S.

at 735 n.1).[3] The burden of pleading and proving that a claim is procedurally defaulted rests with

the state. *Jones v. Sussex I State Prison*, 591 F.3d 707, 716 (4th Cir. 2010) (citations omitted).

Absent a showing of "cause for the default and actual prejudice as a result of the alleged violation

of federal law," or a showing that "failure to consider the claims will result in a fundamental

miscarriage of justice," this Court cannot review the merits of a defaulted claim. *Coleman*, 501

U.S. at 750; *see Harris v. Reed*, 489 U.S. 255, 262 (1989).

---

[3] Under these circumstances, even though the claim has not been fairly presented to the Supreme Court of Virginia, the exhaustion requirement is "technically met." *Hedrick v. True*, 443 F.3d 342, 364 (4th Cir. 2006) (citing *Gray v. Netherland*, 518 U.S. 152, 161–62 (1996)).

In Pittman's § 2254 Petition, he raises the same three claims that he presented to the Circuit

Court in his state habeas petition. (§ 2254 Pet. 5, 7–8); Memorandum of Law in Support of Petition

for Writ of Habeas Corpus 6, *Pittman v. Commonwealth*, No. CL17–1474 (Va. Cir. Ct. filed May

18, 2017). The Circuit Court found that Pittman's state habeas claims, that are presented in the

instant § 2254 Petition as Claim One (a) and Claim Three, were procedurally defaulted pursuant

to the rule in *Slayton v. Parrigan*, 205 S.E.2d 680, 682 (Va. 1974), because Pittman could have

raised, but failed to raise, these claims at trial and on direct appeal. *Pittman v. Commonwealth*,

No. CL17–1474, at 2 (Va. Cir. Ct. July 31, 2017). *Slayton* constitutes an adequate and independent

state procedural rule when so applied. *See Mu'Min v. Pruett*, 125 F.3d 192, 196–97 (4th Cir.

1997). Pittman fails to demonstrate any cause and prejudice for his default or a fundamental

miscarriage of justice. Thus, Claim One (a) and Claim Three are defaulted and barred from review

here, and they will be DISMISSED.

## III. APPLICABLE CONSTRAINTS UPON HABEAS REVIEW

In order to obtain federal habeas relief, at a minimum, a petitioner must demonstrate that

he is "in custody in violation of the Constitution or laws or treaties of the United States."

28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996

further circumscribed this Court's authority to grant relief by way of a writ of habeas corpus.

Specifically, "[s]tate court factual determinations are presumed to be correct and may be rebutted

only by clear and convincing evidence." *Gray v. Branker*, 529 F.3d 220, 228 (4th Cir. 2008)

(citing 28 U.S.C. § 2254(e)(1)). Additionally, under 28 U.S.C. § 2254(d), a federal court may not

grant a writ of habeas corpus based on any claim that was adjudicated on the merits in state court

unless the adjudicated claim:

> **(1)** resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme Court
> of the United States; or

**(2)** resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Supreme Court has emphasized that the question "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams v. Taylor*, 529 U.S. 362, 410 (2000)).

## IV. PURPORTED ERROR OF THE CIRCUIT COURT

In Claim Two, Pittman contends that "[t]he trial court erred by not disregarding the testimony of Shamika Gee, [the] Commonwealth's key witness, who has admitted under oath that she ha[s] lied." (§ 2254 Pet. 7.) Pittman identifies no constitutional violation, and instead challenges the Circuit Court's determination of state law. The trial court's alleged error provides no basis for federal habeas corpus relief. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to re-examine state-court determinations on state-law questions."); *see Sharpe v. Bell*, 593 F.3d 372, 383 (4th Cir. 2010) (citation omitted). Because Claim Two challenges the propriety of the Circuit Court's decision regarding the admissibility of Ms. Gee's testimony, a state law matter, this claim states no basis for federal habeas relief.[4] *See*

---

[4] As discussed above, the Court concludes that Claim One (a) is procedurally defaulted and barred from review here. However, if the Court were to address the merits of Claim One (a), dismissal would be warranted because, in Claim One (a), Pittman challenges the propriety of the Circuit Court's jury instruction for first-degree murder. (§ 2254 Pet. 5.) Pittman's challenge to the Circuit Court's jury instruction is a state law issue, and Claim One (a) states no basis for federal habeas relief. *See Briley v. Bass*, 750 F.2d 1238, 1244 (4th Cir. 1984) (explaining that "the propriety of such [a jury] instruction was purely a matter of state law and not cognizable by a federal court on habeas review" (citing *Hutchins v. Garrison*, 724 F.2d 1425, 1436–37 (4th Cir. 1983))); *Leslie v. Dir., Va. Dep't of Corr.*, No. 3:12CV726, 2013 WL 4039026, at *2 (E.D. Va. July 31, 2013) (explaining that the Circuit Court's failure to give a jury instruction provides no basis for federal habeas relief).

*Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (citing cases for the proposition that "federal habeas corpus relief does not lie for errors of state law"). Thus, Claim Two will be DISMISSED.[5]

## V. SUFFICIENCY OF THE EVIDENCE

In Claim One (b), Pittman contends that "[the] evidence presented at trial was insufficient to establish first-degree [murder]." (§ 2254 Pet. 5.)[6] A federal habeas petition warrants relief on a challenge to the sufficiency of the evidence only if "no rational trier of fact could find [proof of] guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 317 (1979). The relevant question in conducting such a review is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (citing *Johnson v. Louisiana*, 406 U.S. 356, 362 (1972)). The critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Id.* at 318.

On appeal, Pittman challenged the sufficiency of the evidence, arguing that "[t]he court erred in finding the evidence sufficient to prove that the defendant committed murder in the first degree or any degree of homicide due to the lack of proof of premeditation, the circumstantial nature of the evidence, and the questionable credibility of the witnesses." Petition for Appeal 2, *Commonwealth v. Pittman*, No. 1761-14-2 (Va. Ct. App. filed Jan. 21, 2015). In rejecting Pittman's sufficiency of the evidence argument, the Court of Appeals of Virginia aptly found:

---

[5] Moreover, to the extent that, in Claim Two, Pittman challenges the sufficiency of the evidence, as explained in the Court's discussion of Claim One (b), such a claim lacks merit. Therefore, were the Court to consider Claim Two as challenging the sufficiency of the evidence presented at Pittman's trial, the claim would fail on the merits.

[6] The Court notes that in his instant § 2254 Petition, Pittman does not challenge the sufficiency of the evidence as related to his conviction for the use of a firearm in the commission of a felony. (*See* § 2254 Pet. 5.)

When considering the sufficiency of the evidence on appeal, "a reviewing court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Crowder v. Commonwealth*, 41 Va. App. 658, 663, 588 S.E.2d 384, 387 (2003) (quoting *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)). "Viewing the evidence in the light most favorable to the Commonwealth, as we must since it was the prevailing party in the trial court," *Riner v. Commonwealth*, 268 Va. 296, 330, 601 S.E.2d 555, 574 (2004), "[w]e must instead ask whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt,'" *Crowder*, 41 Va. App. at 663, 588 S.E.2d at 387 (quoting *Kelly v. Commonwealth*, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*)). *See also Maxwell v. Commonwealth*, 275 Va. 437, 442, 657 S.E.2d 499, 502 (2008). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319.

Knighton Hill, Jr., also known as "TJ," the victim in this case, was living with his parents in July of 2013. In the early morning hours of July 30, 2013, the victim's mother, Deborah Hill, received a phone call from a neighbor, who had heard gunshots near the side of the Hills' house. In response to the neighbor's call, Mrs. Hill and her husband started to investigate. Eventually, the two came across their son, TJ, lying on the ground at the basement door.

Among some of the items recovered from the murder scene were a single shell casing and bullet fragments. Dr. Lauren Huddle, the medical examiner, testified that the victim died from multiple (i.e., two) gunshots of [sic] the head and the neck. According to Dr. Huddle, both gunshot wounds were equally fatal and would have been immediately incapacitating. When Investigator Keven Harver of the Henrico Police Department came across TJ's body, he noticed that one of the pockets on TJ's pants appeared to have been turned inside out.

Shavonne Jackson, who was acquainted with TJ, testified that she spoke with TJ by phone shortly after 12:00 a.m. on July 30, 2013. Jackson indicated that she and TJ were supposed to meet on July 29, 2013 so that TJ could give her $1,200 as a down payment for a car. Because of Jackson's work schedule, however, the two were ultimately unable to meet on July 29, 2013 and rescheduled their meeting date for July 30, 2013.

Shamika Gee was the Commonwealth's primary witness. Gee and appellant were dating at the time of TJ's murder, although they stopped dating after appellant shot at Gee on August 25, 2013. Although Gee could not remember the exact date of TJ's death, she was able to recall the timeframe. According to Gee, she dropped appellant off "around Whitcomb" sometime during the day. After dropping off appellant, Gee headed to "the south side" to see her sister. Later that evening, Gee tried to call appellant around 10:00 p.m. Gee was unsuccessful at reaching appellant and made "[b]ack to back" attempts to reach him. She was worried that appellant was cheating on her. Appellant finally called Gee back a little bit after midnight. Appellant reassured Gee that he was not cheating on her, and told her he was going to call her back "because he was laying on somebody." An hour later, appellant called Gee again and asked her to pick him up around Whitcomb Street. When Gee arrived at the agreed-upon location, appellant was

not there. Appellant called Gee "a few minutes later" to let her know that he was actually on Whitcomb Street. Gee headed to Whitcomb Street and picked up appellant. The two then headed to appellant's mother's house. Gee testified that, once appellant was asleep, she went through his pockets and found "[a]bout fifteen, seventeen hundred dollars." This was not a normal amount, according to Gee, as appellant usually had "anywhere from three to five hundred dollars in his pocket." The next morning, appellant was on the phone. Appellant told Gee that, on that phone call, he had just learned that TJ had been killed the night before. According to Gee, appellant told her the following: "I had just seen him on Whitcomb Street earlier that, earlier that day before you came to pick me up, I gave him a five. He said that somebody was waiting for to meet him at his house."

On cross-examination, defense counsel proceeded to try to attack Gee's credibility. First, defense counsel focused on Gee's testimony at appellant's bond hearing. Appellant had been arrested in relation to the August 25, 2013 shooting, and Gee testified at the bond hearing related to that arrest. Gee's testimony at that bond hearing was inconsistent with the information she provided to police and prosecutors. In reference to that bond hearing testimony, defense counsel said to Gee, "[s]o you were under oath and you lied time after time after time, correct?" Gee replied, "Yes." Gee testified that appellant had threatened her and had also offered Gee thousands of dollars to lie under oath at his bond hearing. Defense counsel also drew out evidence on cross-examination that the Commonwealth had given Gee money to help pay for a place to live.[7] Second, defense counsel elicited testimony from Gee that she had an embezzlement charge pending. Third, defense counsel elicited testimony from Gee that she had told the lawyer representing appellant on the charge related to the August 25, 2013 incident that appellant was not the one who shot at her. The prosecutor elicited testimony on re-direct however, that Gee's testimony at the multi-jurisdictional grand jury hearing (regarding TJ's murder) was *not* inconsistent with the testimony Gee had just provided at the trial for TJ's murder.

At the conclusion of Gee's testimony, the Commonwealth called Henry Enright, an employee in the billing records section of AT&T. Enright testified that he has testified regarding cell phone towers and cell phone technology "[h]undreds of times." He testified regarding the pertinent phone calls that Gee and appellant exchanged on the night of July 29, 2013 and the morning of July 30, 2013. According to Enright, starting around midnight, appellant placed or received calls, and the cell phone towers from which the calls were made progressed in an eastbound manner. Such data indicated that appellant's phone was moving from a tower closer to Whitcomb Court towards a tower closer to TJ's residence, and then back to a tower closer to Whitcomb Court. Enright explained that the closest tower will be used around 70% of the time. According to Enright, some of the reasons why the nearest cell phone tower would not be used included signal or tower congestion due to high traffic. Enright testified, however, that he would not expect congestion to be a factor occurring between 12:00 a.m. and 2:00 a.m. The

---

[7] Gee's testimony on re-direct makes clear that the Commonwealth was paying for Gee to stay in a hotel room as part of a witness protection effort.

movement of appellant's cell phone over these different locations coincides with Gee's testimony regarding the timeframe.

The Commonwealth then called Detective Marshall Young of the Richmond Police Department. Detective Young was one of the officers who responded to the call regarding the August 25, 2013 incident during which an attempted shooting of Shamika Gee had occurred. Police officers recovered four shell casings[8] from the scene, and submitted those casings to the lab for testing. Stephanie Barnhouse, an employee with the Department of Forensic Science, testified that she made a comparison between the shell casings recovered from the August 25, 2013 incident and the single shell casing recovered from TJ's murder scene. Barnhouse determined that the shell casings from both scenes were the same brand and caliber – and that both sets of casings were fired from a Glock 10mm automatic firearm. Barnhouse testified that in her "personal experience, [she doesn't] see 10-millimeter autos very often."

The Commonwealth called Detective Matt Rosser of the Henrico Police Department as its last witness. During an interview with Detective Rosser, appellant told Detective Rosser that he and TJ had been together from about 8:30 p.m. to 10:00 or 11:00 p.m. on July 29, 2013. Appellant told Detective Rosser that after TJ left, he dozed off at his girlfriend's house[9] and awoke to a phone call indicating that TJ had been killed. Appellant also told Detective Rosser that he did not know where TJ lived, but knew he was from Church Hill. He further indicated that he knew TJ's murder was at TJ's mother's house and that he was not at all familiar with the area.

Code § 18.2–32 provides, in relevant part, as follows: "Murder, other than capital murder, by poison, lying in wait, imprisonment, starving, or by any willful, deliberate, and premeditated killing . . . is murder in the first degree, punishable as a Class 2 felony." "'To premeditate means to adopt a specific intent to kill, and that is what distinguishes first and second degree murder.'" *Rhodes v. Commonwealth*, 238 Va. 480, 485, 384 S.E.2d 95, 98 (1989) (quoting *Smith v. Commonwealth*, 220 Va. 696, 700, 261 S.E.2d 550, 553 (1980)). "[P]remeditated murder . . . contemplates: (1) a killing; (2) a reasoning process antecedent to the act of killing, resulting in the formation of a specific intent to kill; and (3) the performance of that act with malicious intent." *Id.* at 486, 384 S.E.2d at 98. It is well settled that "to constitute a willful, deliberate and premeditated homicide, the intention to kill need not exist for any specified length of time prior to the actual killing." *Giarratano v. Commonwealth*, 220 Va. 1064, 1074, 266 S.E.2d 94, 100 (1980) (citing *Bradshaw v. Commonwealth*, 174 Va. 391, 399, 4 S.E.2d 752, 755 (1939)).

Based on the evidence presented to the jury in this case, a rational trier of fact could find that appellant committed first-degree murder. Appellant correctly points out that his conviction was based on circumstantial evidence. The fact that

---

[8] Interestingly, however, the forensic scientist, Stephanie Barnhouse, testified that she received *five* shell casings.

[9] Detective Rosser testified that appellant had referred to Shameka *West* – and not Shameka Gee – as his girlfriend.

this case was based entirely on circumstantial evidence does not, however, mean a jury could not find appellant guilty of the charged crimes. In fact, the Supreme Court [of Virginia] has stated that it "will affirm a conviction of premeditated murder, even though based upon wholly circumstantial evidence, whenever [it] can say that the reasonable import of such evidence, considered as a whole, is sufficient to show beyond a reasonable doubt that the accused was the criminal agent and that he acted with a premediated intent to kill." *Rhodes*, 238 Va. at 487, 383 S.E.2d at 99. There is ample circumstantial evidence to support appellant's convictions in this case.

First, Gee's and appellant's phone records corroborate Gee's testimony regarding the timeframe during which she and appellant talked on the phone, as well as her testimony regarding the location at which Gee eventually picked up appellant. Second, any questions regarding Gee's credibility as a witness do not counsel toward reversal of appellant's convictions. Cell phone data corroborates Gee's testimony. In addition, the Commonwealth presented evidence that appellant had threatened Gee so as to get her to lie at his bond hearing. In any event, "[t]he credibility of the witnesses and the weight accorded the evidence are matters solely for the factfinder who has the opportunity to see and hear that evidence as it is presented." *Sandoval v. Commonwealth*, 20 Va. App. 133, 138, 455 S.E. 2d 730, 732 (1995). Third, the shell casings recovered from the August 25, 2013 incident and the shell casing recovered from TJ's murder scene are of the same brand and caliber and were fired from a Glock 10mm automatic weapon. Fourth, there is no evidence in the record to indicate that TJ was armed at the time of his murder or that a struggle ensued. He was shot twice – once in the head and once in the neck. Considering all the facts and circumstances, the evidence was sufficient for a jury as a rational factfinder, to conclude that appellant was guilty beyond a reasonable double of the charged offenses.

*Pittman v. Commonwealth*, No. 1761–14–2, at 1–6 (Va. Ct. App. May 20, 2015) (first, third, fourth, fifth, seventh, ninth, eleventh, thirteenth, and fourteenth alterations in original) (omissions in original) (footnote numbers altered).[10]

Upon review of the Court of Appeals of Virginia's decision and the record in this case, the Court discerns no unreasonable application of the law and no unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(1)–(2). Despite Pittman's argument to the contrary, the evidence was sufficient for any rational factfinder to have found Pittman guilty of first-degree murder. In

---

[10] This Court, reviewing the sufficiency of the evidence on federal habeas, is bound by the trial court's findings because Pittman has not presented clear and convincing evidence to rebut the Circuit Court's findings. *See Gray v. Branker*, 529 F.3d 220, 228 (4th Cir. 2008).

Virginia, to obtain a first-degree murder conviction, the Commonwealth must prove that the defendant had "a specific intent to kill, which is something more than malice." *Epperly v. Commonwealth*, 294 S.E.2d 882, 892 (citation omitted). "The intent to kill must come into existence at some time before the killing; it need not exist for any particular length of time." *Id.* (quoting *Smith*, 261 S.E.2d at 553). Further, first-degree murder may be proved by circumstantial evidence. *Rhodes*, 384 S.E.2d at 98 ("Premeditation and formation of an intent to kill seldom can be proved by direct evidence. A combination of circumstantial factors may be sufficient." (quoting *Epperly*, 294 S.E.2d at 892–93 (1982)).

As aptly summarized by the Court of Appeals of Virginia, the evidence presented at trial was sufficient for any rational factfinder to convict Pittman. Specifically, Ms. Gee's testimony about Pittman's actions on the night of the shooting, as corroborated by the cell phone data, Pittman's possession of a large amount of cash in the hours after the shooting, Pittman's actions after the night of the shooting, including shooting at Ms. Gee, and the matching shell casings found at both shootings present ample circumstantial evidence of Pittman's guilt. Further, in addition to the circumstantial evidence summarized in the Court of Appeals of Virginia's opinion, the Court notes that Ms. Gee testified, *inter alia*, that Pittman had a black automatic gun that he carried "[e]very day." (June 3, 2014 Tr. 148–49.) Therefore, upon review of the record in this case, the Court concludes that the Court of Appeals of Virginia's decision was not an unreasonable determination of the facts in light of the evidence presented at trial. *See* 28 U.S.C § 2254(d). For these reasons, Claim One (b) lacks merit and will be DISMISSED.

## VI. REQUEST FOR EVIDENTIARY HEARING

In Pittman's Response, he requests, *inter alia*, that the Court "order an evidentiary hearing." (ECF No. 15, at 2.) In determining whether a case warrants an evidentiary hearing, a federal court must consider whether the evidentiary hearing would provide the petitioner the

opportunity to "prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 475 (2007); *see Mayes v. Gibson*, 210 F.3d 1284, 1287 (10th Cir. 2000). A federal court must also consider the standards set forth in 28 U.S.C. § 2254 when considering whether an evidentiary hearing is appropriate. *Schriro*, 550 U.S. at 474. "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Id.*

Here, based on a thorough evaluation of Pittman's claims and the record before the Court, the Court concludes that Claims One (a) and Three are defaulted and barred from review here, Claim Two fails to present a basis for federal habeas relief, and Claim One (b) lacks merit. Therefore, the Court concludes that habeas relief under § 2254 is not warranted. Pittman's request for an evidentiary hearing (ECF No. 15, at 2) will be DENIED.

## VII. CONCLUSION

For the foregoing reasons, Respondent's Motion to Dismiss (ECF No. 11) will be GRANTED. Pittman's request for an evidentiary hearing (ECF No. 15, at 2) will be DENIED. Pittman's claims will be DISMISSED, and his § 2254 Petition (ECF No. 5) will be DENIED. The action will be DISMISSED. A certificate of appealability will be DENIED.

An appropriate Final Order shall issue.

/s/

Roderick C. Young
United States Magistrate Judge

Date:   June 13, 2019
Richmond, Virginia

14